In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00048-CV

                                                ______________________________

 

 

                                                                  

 

                      IN THE INTEREST OF T.E. AND A.E., CHILDREN

 

 

 

                                                                                                  


 

 

                                       On Appeal from the 354th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 74562

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Christopher
Lamb was in jail June 4, 2007, the date his daughter T.E. was born; has been
incarcerated during T.E.’s whole life; and, thus, has never seen her in
person.  When T.E. was two years old, her
mother voluntarily relinquished her parental rights to the child, and T.E.
began living with her maternal grandmother and step-grandfather.  When T.E. was three years old, a petition for
termination of Lamb’s parental rights was filed.  After a bench trial,[1]
Lamb’s parental rights to T.E.[2]
were terminated.  We affirm the order of
the trial court because (1) legally and factually sufficient evidence
support termination under Section 161.001(1)(Q) of the Texas Family Code, (2)
termination was in T.E.’s best interest, and (3) Lamb’s attorney was not ineffective.

(1)       Legally
and Factually Sufficient Evidence Support Termination Under Section        161.001(1)(Q) of the Texas Family Code

 

            Parental
rights may be terminated when the court finds clear and convincing evidence
that termination is in the best interest of the child, and the parent has
“knowingly engaged in criminal conduct that has resulted in” the parent’s
conviction of an offense and “confinement or imprisonment and inability to care
for the child for not less than two years from the date of filing the
petition.”  Tex. Fam. Code Ann. § 161.001(1)(Q)(ii) (West Supp. 2011).  The two-year time period is applied
prospectively from the petition’s filing date. 
In re A.V., 113 S.W.3d 355,
356 (Tex. 2003); In re R.A.L., 291
S.W.3d 438, 442 (Tex. App.—Texarkana 2009, no pet.).

            Clear and
convincing evidence is that “degree of proof that will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.”  Tex. Fam. Code Ann. § 101.007 (West
2008).  This standard of proof
necessarily affects our review of the evidence. 
In our legal sufficiency review, we examine the entire record in the
light most favorable to the finding to determine whether a reasonable
fact-finder could have formed a firm belief or conviction “about the truth of
the matter on which the State bears the burden of proof.”  In re
J.F.C., 96 S.W.3d 256, 265–66 (Tex. 2002). 
While undisputed facts cannot be disregarded, we are to disregard all
evidence a reasonable fact-finder could have disbelieved or found
incredible.  Id. at 266.

            In our
factual sufficiency review, we give due deference to the determinations of the
fact-finder.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We consider only that evidence the
fact-finder could reasonably have found to be clear and convincing and
determine whether “the evidence is such that a fact-finder could reasonably
form a firm belief or conviction about the truth of the . . .
allegations.”  Id.; J.F.C., 96 S.W.3d at
266.  We are not to “second-guess the
trial court’s resolution of a factual dispute by relying on evidence that is
either disputed, or that the court could easily have rejected as not
credible.”  In re L.M.I., 119 S.W.3d 707, 712 (Tex. 2003).  Conversely, we are not to be “so rigorous
that the only fact-findings that could withstand review are those established
beyond a reasonable doubt.”  H.R.M., 209 S.W.3d at 108.

            Lamb
contends the evidence is legally and factually insufficient to support
termination because there is no evidence that his convictions will result in
confinement for at least two years from the date the petition was filed.  See
Tex. Fam. Code Ann. §
161.001(1)(Q).  The Department of Family
and Protective Services (the Department) filed its petition for protection of a
child, for conservatorship, and for termination in suit affecting the
parent-child relationship August 26, 2009. 
At trial, the Department proved Lamb (1) was then serving a six-year
prison sentence for tampering with physical evidence, which sentence commenced
November 14, 2006, with 133 days’ credit, and (2) was then serving a six-year
prison sentence for aggravated assault with a deadly weapon, which sentence
commenced December 5, 2006, with ninety-one days’ credit.[3]  Lamb testified that his sentence for
aggravated assault will not be completed until the fall of 2012.  Lamb further testified that he has been
incarcerated continuously since before T.E.’s birth.[4]  

            Lamb’s
trial took place February 2, 2011, when Lamb had been incarcerated less than
two years after the date the petition was filed.  While Lamb admits his sentence will not be
discharged until the fall of 2012, his next parole hearing was scheduled for
May 2011.  At trial, Lamb believed “his
chances for parole are good.”  Because
the evidence was, at best, uncertain as to when Lamb would be released, he
claims that no evidence showed he would remain incarcerated until August 26,
2011.  Thus, Lamb claims, the evidence is
legally and factually insufficient to support termination.

            In the face
of a similar argument, the Texas Supreme Court has ruled it was within the
fact-finder’s authority to decide the issue either direction.  That court explained that, while evidence of
availability of parole is relevant, its mere introduction “does not prevent a
fact-finder from forming a firm conviction or belief that the parent will
remain incarcerated for at least two years,” because “[p]arole decisions are
inherently speculative.”  H.R.M., 209 S.W.3d at 109.  Because the fact-finder is the sole arbiter
when assessing the demeanor and credibility of a witness, it is free to
disregard the testimony regarding the probability of parole, “which is barely
more than conjecture,” especially when the record shows multiple
convictions.  Id.; see R.A.L., 291
S.W.3d at 443.

            The
record here indicates Lamb was previously convicted in another matter,[5]
in addition to the convictions for aggravated assault and tampering with
evidence, for which he is currently imprisoned. 
Lamb testified he was denied parole on each of the two previous
occasions his case was reviewed by the parole board.  In light of this evidence, and in light of
the fact that Lamb was twice denied parole, the jury was free to disregard
Lamb’s optimistic testimony.  We,
therefore, conclude that the fact-finder could have reasonably formed a clear
and convincing belief that Lamb would be incarcerated at least through August
26, 2011.[6]

            In addition
to requiring the parent be confined or imprisoned for not less than two years
from the date of filing the petition, Section 161.001(1)(Q) of the Texas Family
Code also requires an inability on the part of the incarcerated parent to care
for the child during the period of incarceration.  Tex.
Fam. Code Ann. § 161.001(1)(Q); A.V.,
113 S.W.3d at 360.

            The evidence
here showed Lamb sent T.E. “cards, anything that I can send to her to let her
know I love her and care for her.”  Lamb
admitted, however, that he made no provisions for T.E.’s care while he was in
prison, stating, “Can’t do anything.  I
am incarcerated.”  Lamb testified that he
will provide T.E. with a safe environment during any visitation he might
receive, and will be able to contribute to T.E.’s financial support in the
future through employment with his grandfather’s remodeling business.  

            Evidence
that Lamb may be able to care for the child after he is released from prison
does not establish that he has the ability to care for the child for the
requisite time during his imprisonment.  See Tex.
Fam. Code Ann. §
161.001(1)(Q)(ii); A.V., 113 S.W.3d
at 360 (when parent who is convicted and sentenced to serve at least two years
is unable to provide for child during that time, State may use subsection Q to
ensure child will not be neglected).  The
evidence established Lamb has not provided any support to T.E.

            The evidence
is both legally and factually sufficient to support the trial court’s finding
under Section 161.001(1)(Q) of the Texas Family Code.  Tex.
Fam. Code Ann. § 161.001(1)(Q).

(2)        Termination Was in T.E.’s Best Interest

            

            Lamb also
argues the evidence is insufficient because the Department failed to prove
termination of his parental rights was in T.E.’s best interest.  See
Tex. Fam. Code Ann. § 161.001(2)
(West Supp. 2011).  There is a strong
presumption that the best interest of a child is served by keeping the child
with a parent.  Tex. Fam. Code Ann. § 153.131(b) (West 2008).  It is further presumed that prompt and
permanent placement of the child in a safe environment is in the child’s best
interest.  Tex. Fam. Code Ann. § 263.307(a) (West 2008).  While it is imperative for courts “to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.” 
In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 

            In reviewing
the sufficiency of the evidence to support the second prong required for
termination, we apply the nonexclusive Holley
factors.  See Holley v. Adams, 544
S.W.2d 367, 371–72 (Tex. 1976).  Those
factors include:  (1) the desires of the
child, (2) the emotional and physical needs of the child now and in the future,
(3) the emotional and physical danger to the child now and in the future, (4)
the parental abilities of individuals seeking custody, (5) the programs
available to assist the parties seeking custody, (6) the plans for the child by
individuals seeking custody, (7) the stability of the home or proposed
placement, (8) the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one, and (9) any excuse for
the acts or omissions committed by the parent. 
Id.

             A party seeking an involuntary termination of
parental rights is not required to prove all nine Holley factors “as a condition precedent” to termination.  C.H.,
89 S.W.3d at 27.  Undisputed evidence of
just one factor may be sufficient to support a finding that termination is in
the best interest of the child.  Id. 
Evidence that establishes one or more statutory grounds for termination
also can be probative evidence that termination is in the best interest of the
child.  Id. at 28.

            Because T.E.
was three years old at the time of trial and has never met her father, we
cannot with certainty determine her desires. 
There is, however, evidence that T.E. has bonded with her foster
parents, and that supports a best-interest finding.  See In
re U.P., 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied).  The fact-finder can also
consider a child’s acknowledgment of a foster parent as his or her parent in
determining the child’s desires.  In re M.D.S., 1 S.W.3d 190, 200 (Tex.
App.—Amarillo 1999, no pet.); see also In
re J.M., 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.) (evidence
that children too young to express desires have bonded with foster family).

            T.E.
lives with her maternal grandmother and step-grandfather.  Celeste Young, the executive director for Court
Appointed Special Advocates of Hunt County, testified that T.E. was doing very
well in the home and that all of her needs were being met.  T.E.’s grandparents express a commitment to
adopting T.E. and to meeting her needs for the rest of her life.  Nick Sanchez, T.E.’s step-grandfather,
testified that, as far as T.E. knows, Nick is her father.  This evidence, while not a direct statement
of her desires, is at least some evidence that T.E. has bonded with her foster
parents.  That, too, supports a
best-interest finding.

            The need for
permanence is a paramount consideration for the child’s present and future
physical and emotional needs.  Without
stability, income, or a home, a parent is unable to provide for a child’s
emotional and physical needs.  In re C.A.J., 122 S.W.3d 888, 893 (Tex.
App.—Fort Worth 2003, no pet.). 
Moreover, while criminal convictions alone do not necessarily lead to
the conclusion that termination of parental rights is in the child’s best
interest, a pattern of criminal actions leading to incarceration is a factor to
be considered.  In re S.K.A., 236 S.W.3d 875, 905 (Tex. App.—Texarkana 2007, pet.
denied).

            The evidence
here indicates that Lamb has been incarcerated all of T.E.’s life, and has, in
fact, spent a good deal of his adult life behind bars.[7]  At the time of T.E.’s conception, Lamb was
unemployed and without a home; Lamb was arrested shortly thereafter.  Lamb’s pattern of criminal activity, his
unemployment, drug use, violence, and inappropriate conduct with a child all
support the finding that termination of his parental rights is in T.E.’s best
interest.  See In re R.R., 294 S.W.3d 213, 236–37 (Tex. App.—Fort Worth 2009,
no pet.); S.K.A., 236 S.W.3d at
903–05.

            Nothing in
the record speaks directly to Lamb’s parenting abilities.  Because Lamb has been in prison throughout
T.E.’s life, he has had no contact with her.  Lamb has, in the past, acted in a sexually
inappropriate way with a child—hence his imprisonment for indecency with a
child by exposure.  This conviction, in
combination with Lamb’s past acts of violence, demonstrates a probable lack of
parenting abilities for T.E., and weighs in favor of termination of Lamb’s
parental rights.

            During his
prison stay, Lamb completed a program called “Changes” that involved anger
management, substance abuse education, parenting classes, and re-entrance into
society.  This is some evidence that Lamb
has made an effort to better himself in order to parent T.E. and weighs against
termination.

            The
stability of the home is another consideration in the best-interest
analysis.  The goal of establishing a
stable, permanent home for a child is a compelling state interest.  In re
C.E.K., 214 S.W.3d 492, 498 (Tex. App.—Dallas 2006, no pet.).  T.E.’s maternal grandparents, with whom the
Department placed T.E. after removal from her mother’s home, plan to adopt T.E.
and her sister, A.E.  The record,
therefore, indicates that the grandparents have a plan for T.E. once Lamb’s
parental rights are terminated.  The
record further indicates that the grandparents have provided a stable home for
T.E., who will be able to remain with A.E. in that home.[8]  Conversely, Lamb offers no plans to provide a
home for T.E.  Instead, Lamb proposes
visitation with T.E. in her grandparents’ home. 
This proposal would result in T.E.’s continuation in foster care and
would prevent adoption by her grandparents. 
Future plans and the provision of a stable home for T.E. weigh in favor
of termination.

            Acts and
omissions by Lamb which indicate that any future relationship with T.E. may not
be a proper one include three criminal convictions, one of which was based on
an improper relationship with a child, the failure to register as a sex
offender, suspected use of illegal drugs, and the failure to secure employment.
 Lamb offers no excuses for these acts
and omissions.  This factor weighs in
favor of termination.

            In this
case, each of the Holley factors
weighs in favor of termination, save one—while in prison, Lamb took advantage
of a program available to assist him in seeking custody of T.E.  However, this single factor is overshadowed
by all remaining considerations, which weigh in favor of concluding termination
of Lamb’s parental rights is in T.E.’s best interest.

            It is not in
T.E.’s best interest to remain in limbo in the foster care system simply to
permit Lamb the opportunity to visit her from time to time, especially when
T.E.’s grandparents stand ready, willing, and able to adopt T.E. and to provide
her with a stable and loving home where T.E. can grow up with her sister.  In light of this evidence, the trial court
could have reasonably formed a firm belief or conviction that termination of
Lamb’s parental rights was in T.E.’s best interest.  Accordingly, the evidence is both legally and
factually sufficient to support the trial court’s finding that termination of
Lamb’s parental rights was in T.E.’s best interest.

(3)        Lamb’s Attorney Was Not Ineffective

 

            Lamb
also claims that his counsel was ineffective.[9]  Indigent persons in parental-rights
termination cases enjoy a statutory right to counsel.  Tex.
Fam. Code Ann. § 107.013(a)(1) (West Supp. 2011).  That statutory right to counsel embodies the
right to effective counsel.  In re M.S., 115 S.W.3d 534, 544 (Tex.
2003).  The standard set forth by the
United States Supreme Court in Strickland
v. Washington, 466 U.S. 668 (1984), applies in dependency cases such as
this.  See M.S., 115 S.W.3d at 545.

            The Strickland standard applies a two-pronged
test to determine whether counsel is ineffective, requiring the party asserting
ineffective assistance to prove by a preponderance of the evidence that (1) his
or her counsel’s representation fell below an objective standard of
reasonableness, and (2) the deficient performance prejudiced the defense.  Strickland,
466 U.S. at 688; M.S., 115 S.W.3d at
545.  We indulge a strong presumption
that counsel’s conduct falls within the wide range of reasonable, professional
assistance and was motivated by sound trial strategy.  M.S.,
115 S.W.3d at 545.  Where, as here, the
record is silent as to the reason that counsel failed to lodge certain
objections or take certain actions, we assume it was due to any strategic
motivation that can be imagined; and, in order to succeed in his complaint,
Lamb is obligated to rebut the presumption that trial counsel’s actions were in
some way reasonable.  Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App.
2007).

            Lamb claims his
trial counsel was ineffective for failing to object to the Department’s Exhibit
1 on the basis that it was irrelevant to the sole ground of termination.[10]  Lamb further maintains counsel was
ineffective in failing to raise a Rule 403 objection to Exhibit 1.

            Exhibit 1
consists of (1) an indictment of Lamb by the grand jury of Harris County on the
felony charge of aggravated sexual assault of a child, (2) a complaint by the
assistant district attorney of Harris County against Lamb, alleging commission
of the felony offense of aggravated sexual assault,[11]
and (3) a judgment based on Lamb’s plea of “guilty” to the offense of indecency
with a child, showing a two-year term of confinement.[12]  Lamb claims his case was prejudiced by the
highly inflammatory nature of this irrelevant evidence.[13]

            The
Department claims counsel’s failure to object to this exhibit on the basis of
relevance was not deficient because evidence of prior convictions is relevant
to the question of the likelihood of parole, hence, to the claim by Lamb that
he would not be spending two years in prison because of release on parole.  See
R.A.L., 291 S.W.3d at 443 (in evaluating sufficiency of evidence to support
finding under Section 161.001(1)(Q), jury may consider evidence of parole in
light of past multiple convictions and parole denial).  Moreover, evidence of criminal conduct,
incarceration, and a conviction for indecency with a child may be taken into
consideration by a fact-finder in determining the best interest of the
child.  See R.R., 294 S.W.3d at 236–37; S.K.A.,
236 S.W.3d at 903–05.

            Exhibit 1
was thus relevant to Lamb’s defense to the sole ground of termination alleged,
as well as to the issue of whether it was in T.E.’s best interest to terminate
Lamb’s parental rights.  It is thus
reasonable to believe that a relevancy objection to this exhibit would likely have
been overruled.  Certainly, we cannot say
that the failure to raise a relevancy objection here fell below an objective
standard of reasonableness.

            Lamb also
complains that trial counsel failed to object to the admission of Exhibit 1 on
the basis of Rule 403 of the Texas Rules of Evidence.  Rule 403 provides:

Although relevant, evidence may be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.

 

Tex. R. Evid.
403.  The fact that evidence has some
prejudicial effect is insufficient to warrant its exclusion.  Pittsburgh
Corning Corp. v. Walters, 1 S.W.3d 759 (Tex. App.—Corpus Christi 1999, pet.
denied).  To be excluded, evidence must
not only create a danger of unfair prejudice, but that danger must
substantially outweigh its relevance.  Castro v. Cammerino, 186 S.W.3d 671, 682
(Tex. App.—Dallas 2006, pet. denied). 
Because the best interest of the child must always be the primary
consideration in a parental rights termination case, evidence relevant to the
best interest of the child will seldom be excluded under Rule 403.  Garza
v. Garza, 217 S.W.3d 538, 555 (Tex. App.—San Antonio 2006, no pet.) (Rule
403 is extraordinary remedy to be used sparingly in parental rights termination
case); In re J.W., 113 S.W.3d 605,
612 (Tex. App.—Dallas 2003, pet. denied); In
re C.Q.T.M., 25 S.W.3d 730, 736 (Tex. App.—Waco 2000, pet. denied).  The decision to admit or exclude evidence
subject to a Rule 403 objection lies within the sound discretion of the trial
court.  Decker v. Hatfield, 798 S.W.2d 637, 639 (Tex. App.—Eastland 1990,
writ dism’d w.o.j.).

            Because
evidence is rarely excluded under Rule 403 in parental rights termination
cases, and in light of the trial court’s discretion in determining
admissibility, trial counsel’s failure to object to Exhibit 1 does not amount
to deficient performance.  We will not
second guess counsel’s judgment on this issue.

            Lamb failed
to establish defective performance by trial counsel.

 

            We affirm
the judgment of the trial court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          October
24, 2011        

Date Decided:             November
23, 2011

 

 

 

 











[1]This
case was originally tried to an associate judge.  After a bench trial, an order of termination
was entered February 2, 2011. 
Thereafter, a trial de novo was requested and granted.  After a bench trial, a de novo order of
termination was entered May 31, 2011.  

 





[2]Although
this appeal is styled to also include the initials A.E., T.E.’s sister, the
judgment at issue relates solely to T.E. 
A.E. is not Lamb’s child and is not involved in this appeal.  The mother of T.E. and A.E. voluntarily
relinquished her parental rights to both children.  





[3]This
sentence is to run concurrent with the preceding sentence for tampering with
physical evidence.  

 





[4]T.E.’s
mother also testified that Lamb has been incarcerated all of T.E.’s life.  

 





[5]Lamb
was arrested in Harris County for the offense of aggravated sexual assault of a
child in 2003.  As part of a plea
bargain, the State reduced the charge to indecency with a child by
exposure.  After pleading guilty to the
reduced charge, Lamb was sentenced to two years in prison.  

 





[6]The
issue in a factual sufficiency review is not whether there is a possibility of
release on parole; rather, it is whether the disputed evidence established that
Lamb would be released from prison before the second anniversary of the date of
the filing of the termination petition.  See H.R.M., 209 S.W.3d at 108.  At trial, Lamb testified, “[O]nce you’re
denied parole twice and you’re still - - behavior is still good the third time,
you’re more likely to get it.  My
behavior has been up to par.”  This
evidence is purely conjecture.  See In re K.R.M., 147 S.W.3d 628, 630
(Tex. App.—San Antonio 2004, no pet.) (father’s “hope that he might be
granted early release is pure speculation”).

 





[7]Lamb
is currently twenty-seven years old.  At
the age of twenty, Lamb was imprisoned for two years for the crime of indecency
with a child.  After having served this sentence,
Lamb assaulted his girlfriend with a knife and struck her in the head with his
fist.  As a result of this conduct, Lamb
pled “guilty” to the charge of aggravated assault with a deadly weapon in
December 2006, and was sentenced to serve six years in prison.  Lamb was also sentenced to serve six years in
prison in November 2006 for tampering with physical evidence.  This conviction emanated from an incident in
which Lamb swallowed what was believed to be a baggie of crack cocaine.  





[8]T.E.’s
mother testified that T.E. and A.E. are best friends.  





[9]We
note that this ground was not raised in Lamb’s statement of points filed April
21, 2011.  This Court has recognized an
exception to such requirement when an appellant raises a claim of ineffective
assistance of counsel on appeal.  See In re K.L.L.H., No. 06-09-00067-CV,
2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, no pet.) (mem. op.) (citing In re J.O.A., 283 S.W.3d 336, 339 (Tex.
2009)). 
Since the time this appeal was filed, the Legislature has repealed
those provisions of Section 263.405 of the Texas Family Code which required the
filing of a statement of points on appeal of a final termination order.  Tex.
Fam. Code Ann. § 263.405 (West 2008) (amended by Act of May 5,
2011, 82nd Leg., R.S., ch. 75, §§ 4–5, eff. Sept. 1, 2011).

 





[10]As
previously discussed, the sole ground of termination was Lamb’s knowing
engagement “in criminal conduct that has resulted in” his conviction,
“imprisonment and inability to care for [T.E.] for not less than two years from
the date of filing the petition.”  Tex. Fam. Code Ann. § 161.001(1)(Q).

 





[11]Both
the indictment and the complaint refer to the same offense, alleged to have
occurred May 8, 2003.

 





[12]The
judgment lists the terms of the plea bargain as “2 years TDC.  State moves reduce from F-1.”  

 





[13]Lamb
does not assert that, but for this alleged unprofessional error, the result of
the proceeding would have been different. 
See Strickland, 466 U.S. at
694.