

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00577-CV

**IN THE INTEREST OF J.J.C.**, A.C., Je.J.C., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02118
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  January 28, 2015

AFFIRMED

Appellant A.C. (Father) appeals the trial court's order terminating his parental rights to

J.J.C. and A.C.[1]  We affirm the judgment of the trial court.

### ANALYSIS

On appeal, Father complains that the evidence is legally and factually insufficient to

support the court's findings of statutory grounds for termination and its finding that termination is

in the children's best interest.

---

[1] The judgment states that appellant A.C.'s parental rights were terminated as to his known children J.J.C. and A.C. Although appellant is the presumed father of the two year old child Je.J.C., the judgment states that the father of Je.J.C. is unknown as no admission of paternity was filed, and terminates the parental rights of the unknown father.  The mother's rights to all three children were also terminated.

### *Standard of Review*

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d at 263; *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification of conservatorship order).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we view all the evidence in the light most favorable to the trial court's findings and judgment to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the findings are true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. In reviewing factual sufficiency, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

*Statutory Grounds*

At the conclusion of the bench trial, the trial court found the following four statutory grounds for termination of Father's parental rights: (i) engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; (ii) constructively abandoning the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months; (iii) failing to comply with the family service plan; and (iv) knowingly engaging in criminal conduct that resulted in conviction of an offense and confinement and inability to care for the child for not less than two years. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(E), (N), (O), (Q) (West 2014). Although Father acknowledges that the trial court terminated his parental rights on the basis of four statutory grounds, he only challenges three of the four grounds on appeal. Father challenges the legal and factual sufficiency of the evidence to support the findings of endangerment under subsection (E), constructive abandonment under subsection (N), and failure to complete the family service plan under subsection (O). However, he does not challenge the court's finding under subsection (Q) that he "knowingly engaged in criminal conduct that has resulted in [his] conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(Q). Because Father does not challenge this ground, we need not address his argument that the evidence is insufficient to support the court's findings on the other three grounds under section 161.001(1). *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied).

In the interest of justice we will, however, consider the sufficiency of the evidence to support termination under subsection (Q) of section 161.001(1). *See In re A.V.*, 113 S.W.3d at 362. Imprisonment alone is insufficient to justify termination of the parent-child relationship. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.P.H.*, 196 S.W.3d 289,

294 (Tex. App.—Eastland 2006, no pet.). In order to justify termination of parental rights under subsection (Q), there must be clear and convincing evidence of both a two-year period of imprisonment and an inability to care for the child while imprisoned. *In re J.P.H.*, 196 S.W.3d at 294. "[I]f the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (quoting *In re A.V.*, 113 S.W.3d at 360). The Department must first establish by clear and convincing evidence that the parent knowingly engaged in criminal conduct that resulted in his conviction and confinement for at least the two-year period after filing of the petition. TEX. FAM. CODE ANN. § 161.001(1)(Q). The burden then shifts to the parent to produce some evidence showing that he made arrangements for the care of the child during his imprisonment. *In re H.R.M.*, 209 S.W.3d at 110; *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied). If the parent meets this burden of production, then the Department has the burden of persuasion to show that the arrangements would not satisfy the parent's duty to the child. *In re Caballero*, 53 S.W.3d at 396.

Here, it is undisputed that Father was incarcerated from the date the Department filed its petition to the final termination hearing at which he participated by telephone—a period of ten months. The evidence shows that Father was imprisoned based on a violation of his parole for two cases of possession of a controlled substance with intent to deliver. He received a sentence of eight years' imprisonment with a release date of March 17, 2017, but stated he will be eligible for parole in November 2014. Because parole decisions lie entirely within the parole board's discretion, mere admission of parole-related evidence does not preclude a fact finder from forming a firm belief that the parent will remain incarcerated for at least two years. *Ex parte Moussazadeh*, 64 S.W.3d 404, 413 (Tex. Crim. App. 2001) (orig. proceeding); *In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.) (stating a father's "hope that he might be granted

early release is pure speculation"). As to Father's ability to care for the children during his incarceration, there was no evidence that Father had any visits or corresponded with the children after his incarceration. Further, there was no evidence that Father made any arrangements for the children's care during his incarceration, other than leaving them with their mother. "Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care." *In re H.R.M.*, 209 S.W.3d at 110 (noting that "[c]ases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child"). The record contains sufficient evidence to support the trial court's finding that the requirements of section 161.001(1)(Q) were met by clear and convincing evidence.

### *Best Interest*

Father next challenges the evidence as legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (requiring clear and convincing evidence "that termination is in the best interest of the child"). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the statutory ground under subsection (1) and best interest under subsection (2) of section 161.001. *Id.* at 249; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Nonexclusive factors that the trier of fact in a termination case may

also use in determining the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (citations omitted); *see In re E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"). These factors are not exhaustive; some listed factors may be inapplicable to some cases. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of meager evidence relevant to each factor will not support such a finding. *Id.*

### i. Children's desires and plans for the children

J.J.C. is seven years old and A.C. is six years old. Melissa Martinez, the caseworker, testified that the children have been in the care of their maternal great grandmother during the pendency of the case, and that their needs are being met and they are doing well. She has observed their care in the great grandmother's home and it is a long-term option for the children. The great grandmother intends to pursue legally adopting the children. Martinez also testified that the children told her they want to continue living with their great grandmother.

### ii. Needs of the children, Father's parenting abilities, and stability of the home

As to the stability of the home, there was evidence that both parents are drug users and have been convicted of several drug related offenses. During the pendency of the Department's

case, Father was in prison serving an eight-year sentence and the mother was placed in a substance abuse facility due to a violation of her probation. Father testified that his last visit with the children occurred in August 2013, the month before the Department filed its petition for termination. There was no evidence that Father has been in contact or been involved in any way with the children since August 2013. Father did not substantially engage in any of the family services contained in the Department's family service plan, including counseling for drug related issues.

### iii. Present and future emotional and physical danger to the children

The same evidence may be probative of both section 161.001(1) grounds and best interest, although such evidence does not relieve the State of its burden to prove best interest. *See In re C.H.*, 89 S.W.3d at 28. Thus, the court was free to consider the endangerment evidence presented at trial, including Father's criminal history consisting primarily of several drug possession and possession with intent to deliver convictions. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (stating "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct"); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination on the ground of endangerment because "it exposes the child to the possibility that the parent may be impaired or imprisoned"). At trial, Father conceded that he has four prior convictions for possession of marijuana, two prior convictions for possession with intent to deliver, and a driving while intoxicated conviction. In addition, the affidavit attached to the Department's petition shows that Father also has prior convictions for assault bodily injury-family member, abandonment/endangerment of a child, forgery, evading arrest with a vehicle, and possession of a prohibited substance in a correctional facility. Father also has a CPS history with three referrals for neglectful supervision of the children, one which was ruled "reason to believe" and two which were "ruled out." As noted, Father was serving an eight-year sentence for violating parole on two

of the possession with intent to deliver cases at the time of the termination hearing. "If the imprisonment of the parent displays a voluntary, deliberate and conscious course of conduct, it qualifies as conduct that endangers the child." *Walker*, 312 S.W.3d at 617 (noting that offenses that occurred before the child's birth may still be considered as part of a course of conduct that endangers the child); *see In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (fact finder may infer that past conduct endangering the child's well-being may recur in the future if the child is returned to the parent). A parent's conduct that "routinely subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child." *Walker*, 312 S.W.3d at 617; *see In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

### iv.    Availability of assistance

This factor considers whether programs are available to assist the person seeking custody in promoting the best interests of the child. Martinez testified that she sent the Department's family service plan to Father by certified mail but he did not sign and return it and had not substantially engaged in any of the services set forth in the plan. Martinez also stated that she wrote letters to Father, but he did not reply or correspond with her at all about the case. Father testified that he never received the family service plan because he was incarcerated in Beeville and later Beaumont, not Huntsville as Martinez testified. Finally Martinez testified she did not know what types of services were available at the prison facility where Father was incarcerated. There was no evidence that Father had attended any counseling services or other drug-treatment or parenting programs during his incarceration.

### v.    Parental acts or omissions

These factors consider acts or omissions of the parent that indicate the existing parent-child relationship is not a proper one, and any excuses therefor. *See Holley*, 544 S.W.2d at 372. As

detailed above, the evidence raised concerns regarding Father's pattern of drug possession and drug dealing. Martinez testified there was evidence that Father had taken one of the children, A.C., with him on a drug delivery before he was jailed for the parole violation. At the hearing, Father agreed that his criminal history shows a course of conduct in which he has failed to abide by the law. Father stated, however, that he wishes to be part of his children's lives in the future.

In sum, as to the children's best interest, there was no evidence that Father has the ability to provide the children with a safe and stable home environment at this time or in the future. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Stability is important in a child's emotional and physical development."). To the contrary, the evidence established that Father has deliberately engaged in a course of criminal conduct, both before and after the children's birth, that endangers the children's physical and emotional well-being through his illegal conduct as well as his periods of incarceration. *See Walker*, 312 S.W.3d at 617. There was no evidence that Father remained in contact with the children during his current incarceration or that he engaged in any drug-treatment or family counseling or other services in an effort to improve his parenting abilities. Finally, there was evidence that the children are happy and doing well in their great grandmother's home and that she intends to adopt them. Based on this record, we conclude that the evidence is legally and factually sufficient to support the court's firm belief or conviction that termination of Father's parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *Holley*, 544 S.W.2d at 371-72.

## CONCLUSION

Based on the foregoing reasons, we overrule Father's issues on appeal and affirm the trial court's order terminating Father's parental rights to J.J.C. and A.C.

Rebeca C. Martinez, Justice