**Opinion filed July 18, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00034-CV

_____

## IN THE INTEREST OF D.L.B., A CHILD

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 63,945**

## MEMORANDUM OPINION

This is an appeal from an order in which the trial court terminated the parental rights of D.L.B.'s father after a de novo hearing. The mother's parental rights had previously been terminated based upon her voluntary relinquishment of those rights. On appeal, the father presents two issues in which he challenges the legal and factual sufficiency of the evidence. We affirm.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To terminate parental rights, it must be shown by clear and convincing evidence that the parent

has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (Q). Specifically, the trial court found that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being and that Appellant had knowingly engaged in criminal conduct that resulted in his conviction and imprisonment and inability to care for the child for not less than two years from the date that the petition was filed in this cause. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

In his issues on appeal, Appellant challenges the legal and factual sufficiency of the evidence of the trial court's findings under subsections (E) and (Q), but he does not challenge the best interest finding. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

*Background Facts*

The Department of Family and Protective Services removed D.L.B. and the mother's other children from the mother's care due to the deplorable conditions of the mother's home. D.L.B. was five years old at the time of removal. Evidence regarding the child's best interest was introduced at trial, but we will not detail that

evidence here as Appellant does not challenge the best interest finding made by the trial court.

Due to his incarceration, Appellant appeared by phone at the final hearing on termination. Appellant had been incarcerated throughout D.L.B.'s entire life. In August 2012, Appellant was convicted of the offense of aggravated assault with a deadly weapon and was sentenced to serve a term of confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice. In September of 2012, Appellant was convicted of the offense of debit card abuse and sentenced to a term of confinement for two years in a state jail facility. The Department's conservatorship caseworker testified that, to her knowledge, Appellant's release date is April 2022. During his testimony, Appellant acknowledged that the "max" on his sentence is April 2022. Appellant testified that he would be eligible for parole soon (in March 2019). However, at the time of trial, Appellant had already been denied parole on two occasions.

Appellant listed his mother as a potential placement for D.L.B., but Appellant's mother was in jail in California. After this case had been pending for several months, Appellant's mother returned to Texas and attempted to intervene in this case. The trial court subsequently found, among other things, that Appellant's mother's intervention was not in D.L.B.'s best interest, and the trial court struck the petition in intervention. At the time of the final hearing on termination, Appellant's mother had recently provided information for a home study, and she was still being considered by the Department as a potential placement. Her home study and evaluation had not been approved at the time of trial. Appellant's mother had a criminal history that was a concern, including theft, fraud, and debit/credit card abuse. An adult relative that lived in Appellant's mother's home also had a criminal history; the adult relative's criminal history involved an assault with bodily injury. Appellant had no other relatives that could assist in taking care of D.L.B. while

3

Appellant was incarcerated. When asked if he had other relatives that the Department could consider as a placement for D.L.B., Appellant responded: "Nobody that doesn't have a criminal history, no."

*Analysis*

In his second issue on appeal, Appellant challenges the finding made pursuant to subsection (Q) of Section 161.001(b)(1). To support a finding under subsection (Q), the record must show that the parent will be incarcerated or confined and unable to care for the child for at least two years from the date the termination petition was filed. FAM. § 161.001(b)(1)(Q); *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006). Appellant does not dispute that he has been convicted of a crime and incarcerated. However, he does dispute that the Department proved that he would remain incarcerated for at least two years from the date the petition was filed. He also contends that he produced some evidence at trial that he had arranged for his mother to care for D.L.B. We disagree.

Although evidence regarding the availability of parole may be relevant to determine whether the parent will be released from prison within two years, the mere introduction of parole-related evidence "does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *H.R.M.*, 209 S.W.3d at 109. Parole decisions rest entirely within the discretion of the parole board. *Id.* (citing *In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.)). In this case, as in *H.R.M.*, the trier of fact was free to disregard Appellant's testimony about his belief that he would indeed be paroled soon. *See id.* Appellant had multiple convictions and had previously been denied parole twice. His release date, in April 2022, was more than two years after August 17, 2018—the date that the petition containing an allegation under subsection (Q) was filed.

4

Appellant also contends that the evidence is insufficient under subsection (Q) because, although Appellant was currently unable to care for his child, Appellant's mother was available and willing to care for the child in Appellant's stead. The "care" contemplated by subsection (Q) encompasses arranging for care to be provided by the incarcerated parent's family or someone else who has agreed to assume the incarcerated parent's obligation to care for the child. *Id.* at 110; *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet denied). However, Appellant's mother was apparently in jail in California and unable to care for the child for several months while this case was pending below. After Appellant's mother returned to Texas and filed a petition in intervention, the trial court determined that her intervention was not in the child's best interest. Nonetheless, the Department considered Appellant's mother as a possible placement for D.L.B. At the time of trial, however, Appellant's mother had not been approved as a placement, and given her criminal history, her approval was speculative at best. Thus, Appellant's potential substitute caregiver was not a viable option.

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that Appellant had knowingly engaged in criminal conduct, that he was duly convicted and imprisoned for that conduct, and that his imprisonment and inability to care for D.L.B. would continue for more than two years after the date that the petition was filed in this cause. Based on the evidence presented at trial, the trial court could reasonably have also formed a firm belief or conviction that Appellant's only proposed substitute caregiver was not a viable option to care for D.L.B. on Appellant's behalf during his incarceration. We hold that the evidence is legally and factually sufficient to support the trial court's finding under subsection (Q). *See H.R.M.*, 209 S.W.3d at 108–10; *Caballero*, 53 S.W.3d at 396. We overrule Appellant's second issue.

Even though we have upheld the trial court's finding under subsection (Q), we must also address Appellant's first issue insofar as it relates to the finding under subsection (E). *See In re N.G.*, No. 18-0508, 2019 WL 2147263, at \*4 (Tex. May 17, 2019) (concluding that due process and due course of law require an appellate court to address grounds (D) and (E) when raised by the parent on appeal and also require the appellate court to detail its analysis on grounds (D) and (E)). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Mere imprisonment, standing alone, does not support a finding under subsection (E) as it does "not . . . constitute engaging in conduct which endangers the emotional or physical well-being of a child." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, evidence of criminal conduct, convictions, and imprisonment and their effect on the parent's life and ability to parent may establish an endangering course of conduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). An offense committed by a parent before the birth of the parent's child "can be a relevant factor in establishing an endangering course of conduct." *In re E.N.C.*, 384 S.W.3d 796, 804–05 (Tex. 2012) (citing *J.O.A.*, 283 S.W.3d at 345).

The record reflects that Appellant had a history of violence and irresponsible choices, and the trial court could have determined from this evidence that Appellant voluntarily engaged in an endangering course of conduct. *See In re S.L.-E.A.*, No. 02-12-00482-CV, 2013 WL 1149512, at *9–10 (Tex. App.—Fort Worth Mar. 21, 2013, pet. denied) (mem. op.); *see also J.O.A.*, 283 S.W.3d at 345–46; *see also In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.—San Antonio 2000, no pet.). At the termination hearing, Appellant admitted to the course of conduct that resulted in his incarceration. He testified that he had been involved in two separate offenses of aggravated assault in which the victims were stabbed. Appellant admitted that, in one of those assaults, he pulled out a knife and stabbed a man that had previously broken Appellant's brother's jaw. Appellant also testified that, by doing so, he violated his probation for debit card abuse. Because we believe that the evidence is legally and factually sufficient to show by clear and convincing evidence that Appellant engaged in a continuing course of conduct that ultimately endangered D.L.B.'s physical or emotional well-being, we overrule Appellant's first issue on appeal.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

July 18, 2019                                                    CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

7